UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 JAN -7  PM 3: 57

BY _____
DEPUTY CLERK

JOHN NORTON-GRIFFITHS,                    )
MARILYN NORTON-GRIFFITHS,            )
                                                               )
              Plaintiffs,                                 )
                                                               )
       v.                                                     )        Case No. 5:10-cv-169
                                                               )
WELLS FARGO HOME MORTGAGE,        )
                                                               )
              Defendant.                               )

**OPINION AND ORDER**
**GRANTING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT**
**AND GRANTING PLAINTIFFS LEAVE TO AMEND**
(Doc. 7)

This matter came before the court on November 3, 2010 for oral argument on

Defendant Wells Fargo Home Mortgage's motion to dismiss the Complaint filed by

Plaintiffs, John Norton-Griffiths and Marilyn Norton-Griffiths.  Defendant seeks

dismissal of Plaintiffs' claims that Defendant violated the Truth in Lending Act, 15

U.S.C. §§ 1601-1667 (the "TILA"), with regard to Plaintiffs' request to obtain a lower

interest rate on their home mortgage.  Defendant contends that because the TILA does

not require a truth-in-lending disclosure in the circumstances of this case, Plaintiffs have

failed to state a claim and dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6).

Defendant has not moved to dismiss Plaintiffs' state law claims, except on the basis of

jurisdiction which motion Defendant has withdrawn.[1]  Plaintiffs oppose dismissal.

---

[1] At oral argument, Defendant withdrew its argument that in the event Plaintiffs' federal claims
are dismissed, Plaintiffs would need to satisfy diversity of citizenship jurisdictional requirements
with regard to Plaintiffs' remaining state law claims.  Defendant now asks the court to refrain
from exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over Plaintiffs'
remaining claims in the event Plaintiffs' federal question claims are dismissed.

Plaintiffs are self-represented.  Defendant is represented by Merritt S. Schnipper, Esq. and Andre D. Bouffard, Esq.

## I.  Factual and Procedural Background.

The Complaint alleges that, in 1994, Plaintiffs purchased real property upon which they constructed their home, financing the construction costs themselves.  They began occupying the home in May of 1997, and approximately two years later, they entered into a thirty-year fixed rate residential note and mortgage with Wells Fargo Home Mortgage[2] with an interest rate of 7.75% ("Plaintiffs' Residential Mortgage").

In April 2009, Plaintiffs contacted Defendant, seeking a reduction in their Residential Mortgage's interest rate.  At the time, Plaintiffs had made 126 monthly payments of $1,332.53 and were not in default.  They advised Defendant that "[w]e specifically are **not** requesting re-financing, so that the 'first-in-line' position of [our Residential Home Mortgage,] as a lien against our home may be fully maintained." (Doc. 1-2 at 1.)

### A.  The Forbearance Agreement.

In response to Plaintiffs' request for a reduction in their Residential Mortgage's interest rate, Defendant's Borrower Counseling Services sent Plaintiffs a "Special Forbearance Agreement" (the "Forbearance Agreement") with a cover letter dated November 18, 2009.  The cover letter advised that the Forbearance Agreement was "not a waiver of the accrued or future payments that become due, but a trial period showing you can make regular monthly payments."  (Doc. 1-5 at 2.)

The one-page Forbearance Agreement stated that Plaintiffs' loan was "due for 0 installments" and, contradictorily, that "[t]he indebtedness of the referenced loan is in default."  (Doc. 1-5 at 4.)  It informed Plaintiffs that, after modification, their loan would not be "contractually current," and that Plaintiffs may still have outstanding payments

---

[2] Defendant filed a motion to amend its prior filings *nunc pro tunc* to correct the name of the corporate defendant.  (Doc. 17.)  Defendant asserts it misidentified itself as Wells Fargo Home Mortgage, Inc., and that its correct corporate name is Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.  Plaintiffs have responded with a motion for sanctions.  (Doc. 19.) Those motions are not addressed herein.

and fees because the amount of the modified installment may be less than the total amount due. The Forbearance Agreement provided for a temporary reduction in Plaintiffs' monthly payments to $1,105.24 for a four-month trial period from December 2009 through March 2010. Upon Plaintiffs' successful completion of the trial period, Defendant promised to consider approving Plaintiffs' request for a loan modification based upon investor guidelines. The Forbearance Agreement provided that "[a]ll of the provisions of the [Residential Mortgage], except as herein provided, shall remain in full force and effect." (Doc. 1-5.) The cover letter instructed Plaintiffs to immediately sign the Forbearance Agreement and return it to Defendant.

Plaintiffs unsuccessfully attempted to reach Defendant by telephone to point out what they characterized as numerous defects and errors in the Forbearance Agreement, and to ascertain what they believed would be a new interest rate for their Residential Mortgage. Despite the alleged errors in the Forbearance Agreement and their concern that Defendant sought to force them into default, Plaintiffs signed the Forbearance Agreement on December 10, 2009 and returned it to Defendant, together with the first of the four mortgage payments required thereunder. In an effort to overcome what they viewed as "threats and defects" in the Forbearance Agreement, Plaintiffs added to their $1,105.24 payment the $227.29 difference between their regular mortgage payment amount and the trial period reduced payment amount. Plaintiffs instructed Defendant to apply the $227.29 difference to their unpaid principal balance as additional principal. Plaintiffs' November 2009 monthly mortgage statement revealed an unchanged monthly payment of $1,332.53, and an unchanged interest rate of 7.750%.

In a January 2010 letter to Defendant, Plaintiffs reiterated their concerns regarding the Forbearance Agreement and disputed how their first payment under that Agreement had been applied. Plaintiffs asserted, among other things, that because the Forbearance Agreement failed to state the revised interest rate, Defendant had violated the TILA. Plaintiffs advised Defendant that they were unilaterally modifying the interest rate for the Residential Mortgage to 5.00%. Plaintiffs enclosed the second payment due under the Forbearance Agreement, again adding $227.29 to the $1,105.24 payment due, and stating

3

how they wanted their payment to be allocated as between principal and interest.
Plaintiffs made the two remaining payments under the Forbearance Agreement in this
same manner. Defendant applied Plaintiffs' payments during the four month trial period
in accordance with the original terms of Plaintiffs' Residential Mortgage.

### B. The Loan Modification Agreement.

On March 22, 2010, Plaintiffs received from Defendant a proposed Loan
Modification Agreement with a modified interest rate of 5.00%, together with a cover
letter which purported to confirm a conversation between Plaintiffs and Defendant
wherein Defendant "agreed to a modification of your mortgage loan." (Doc. 1-11 at 1.)
The cover letter instructed Plaintiffs to sign the Loan Modification Agreement and
provide their new monthly payment amount of $1,097.41 "which will be applied towards
the unpaid balances." (Doc. 1-11 at 1.) The letter further stated that "time is of the
essence" and Defendant would need to receive the Loan Modification Agreement and
Plaintiffs' $1,097.41 payment within ten business days in order to complete the loan
modification process. Defendant advised that failure to adhere to this timetable would
cause Defendant to conclude that Plaintiffs were no longer interested in modifying their
existing Residential Mortgage. The Loan Modification Agreement provided that "except
as otherwise specifically provided in this Agreement, [Plaintiffs' Residential Mortgage]
will remain unchanged, and Borrower and Lender will be bound by, and shall comply
with, all of the terms and provisions thereof, as amended by this Agreement." (Doc. 1-11
at 8.)

Plaintiffs never signed the Loan Modification Agreement, and make no claim that,
as drafted, it is binding upon either party. In a March 26, 2010 letter to Defendant,
Plaintiffs pointed out numerous alleged errors in the Loan Modification Agreement. In
this same communication, Plaintiffs stated that they had chosen December 10, 2009, the
date of the Forbearance Agreement, as the date they would deem their Residential
Mortgage to have been modified. Based upon this revision, Plaintiffs calculated the
amount of principal due under the Residential Mortgage as $154,410.29 because
Defendant had allegedly arbitrarily and unlawfully capitalized their interest charges for

4

April and May 2010 at the "defunct rate" of 7.75%, without notice to or permission from Plaintiffs, and had miscalculated their monthly payment. (Doc. 1-12.) Plaintiffs demanded that Defendant send them a Loan Modification Agreement reflecting Plaintiffs' "corrections" within ten days. Defendant did not comply with this deadline.

On April 12, 2010, Plaintiffs again wrote Defendant, stating that they had not received the corrected Loan Modification Agreement as demanded in their March 2010 letter. As a result, Plaintiffs stated they would "impose" upon Defendant "the correct and lawful terms upon which we shall continue payments of this Loan" in accordance with an amortization schedule that Plaintiffs enclosed. (Doc. 1-17.) According to Plaintiffs' calculations, their monthly payment was now $1,074.66, and they enclosed a check for that amount. Plaintiffs stated that if they did not receive a corrected Loan Modification Agreement from Defendant within ten days, they would file suit.

On July 14, 2010, Plaintiffs filed a Complaint in this court based upon federal question jurisdiction, alleging that Defendant had committed acts of "Fraud, Mail Fraud, Attempted Embezzlement and False Accounting against Plaintiffs and acted in violation of the Truth in Lending Law, by Defendant's responses to Plaintiff[s'] request for modification of the Interest Rate applicable to the Mortgage Loan between the parties."[3] (Doc. 1 at 1.) Plaintiffs also raised state law claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. Plaintiffs seek compensatory damages and punitive damages.

## II. Conclusions of Law and Analysis.

### A.    Standard of Review.

When deciding a motion brought under Rule 12(b)(6), a court assumes "all well-pleaded, nonconclusory factual allegations in the complaint to be true," *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), and determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950

---

[3] During oral argument, Plaintiffs stated that they were not pursuing claims alleging Defendant violated criminal laws, although they may seek to cite Defendant's alleged criminal violations as evidence in support of their other claims.

(2009). The court also draws "all reasonable inferences in the plaintiffs' favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. In addition, "[c]onsistent with the case law, . . . [the court] eschew[s] reliance on the pleader's rhetorical flourishes, including unsupported conclusions and assertions." *Palmer v. Champion Mortg.*, 465 F.3d 24, 25 (1st Cir. 2006).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). Here, the relevant documents have been attached as exhibits to the Complaint.

Even after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), courts "remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted). But while the court is "mindful that it must not allow a *pro se* litigant's rights to be impaired by harsh application of technical rules, the rule in favor of liberal construction cannot save *pro se* litigants who do not present cognizable arguments." *Collins v. Blumenthal*, 581 F. Supp. 2d 289, 291 (D. Conn. 2008) (internal quotation marks and citations omitted).

## B.   Plaintiffs' TILA Claims.

Plaintiffs' federal claims rest on Defendant's alleged violations of the TILA in issuing the Forbearance Agreement and the Loan Modification Agreement without TILA disclosures. In their Complaint, Plaintiffs appear to assert that they are entitled to actual TILA disclosures. At oral argument, however, they clarified their claim as asserting that while actual truth-in-lending disclosures were not required under the TILA, Defendant had an obligation to notify Plaintiffs of any modifications to the terms of their Residential Mortgage. Defendant seeks dismissal of Plaintiffs' TILA claims, contending that the

6

TILA does not require disclosures for either the Forbearance Agreement or the Loan Modification Agreement.

The TILA is a consumer protection act that seeks to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a). It is designed to help a consumer more readily compare "the various credit terms available to him[.]" *Schnall v. Marine Midland Bank*, 225 F.3d 263, 267 (2d Cir. 2000) (quoting *N.C. Freed Co., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973)). "To this end, the TILA requires creditors to disclose clearly and accurately all the material terms of a credit transaction." *Palmer*, 465 F.3d at 27 (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)). "Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying [c]ongressional purpose is to be effectuated." *N.C. Freed Co.*, 473 F.2d at 1214 (citations omitted). Creditors who fail to comply with the TILA disclosure requirements are subject to civil liability. *See* 15 U.S.C. § 1640(a). However, despite its broad protections, the TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions. Its limited office is to protect consumers from being misled about the cost of credit." *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997).

Pursuant to its authority "to elaborate and expand the legal framework governing commerce in credit" the Federal Reserve Board has implemented governing regulations under the TILA, commonly referred to as "Regulation Z." 12 C.F.R. Part 226 (1999); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980). Regulation Z mandates that disclosures be made clearly and conspicuously in writing and include, among other things, the amount financed, the finance charge, the annual percentage rate, total payments, and total sale price. *See* 12 C.F.R. §§ 226.17(a), 226.18(b), (d), (e), (g), (j).

### 1. The Forbearance Agreement.

Plaintiffs acknowledge that Defendant sent them the Forbearance Agreement in response to their request for a modification of their interest rate, and they concede that they did not enter into a new loan. They claim, however, that they were legally entitled

to an explanation regarding how Defendant arrived at the reduced monthly payment set forth in the Forbearance Agreement. Defendant responds that the Forbearance Agreement is exempt from TILA disclosure requirements, that the Forbearance Agreement's temporary reduction in Plaintiffs' monthly mortgage payment was adequately explained, and that Plaintiffs' interest rate remained unaltered by the Forbearance Agreement.

"Generally, events subsequent to a consumer loan transaction do not affect the validity of the initial disclosures or require the creditor to make further disclosures." *Katz v. Cal-Western Reconveyance Corp.*, 2010 WL 424453, at *4 (N.D. Cal. Jan. 27, 2010) (citing 15 U.S.C. § 1634). Moreover, for TILA purposes, "disclosure" is not a general, amorphous obligation but "a term of art which refers to the manner in which a creditor must convey the information which Congress deemed basic to an intelligent assessment of a credit transaction." *Underwood v. Am. Home Mortg. Corp.*, 66 B.R. 656, 660 (Bankr. W.D.Va. 1986).

Here, Plaintiffs do not claim that the Forbearance Agreement was a refinancing,[4] that they were advanced new monies, or that their Residential Mortgage was satisfied and released. Correspondingly, neither Defendant's cover letter nor the Forbearance Agreement state or suggest that the Forbearance Agreement was intended to satisfy and replace Plaintiffs' Residential Mortgage, that Plaintiffs were receiving a further extension of credit, or that Plaintiffs' interest rate had been modified. Instead, the Forbearance Agreement merely temporarily modified the amount of Plaintiffs' monthly mortgage payment during a four month trial period. This temporary modification did not require TILA disclosures. *See Hart v. GMAC Mortg. Corp. (In re Hart)*, 246 B.R. 709, 738 (Bankr. D. Mass. 2000) ("[T]he 1997 forbearance agreement and the repayment agreement with respect to the principal reduction do not constitute refinancings that would require new [TILA] disclosures. This is because the existing obligation was not

---

[4] "A refinancing occurs when an existing obligation that was subject to [the TILA] is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer." 12 C.F.R. § 226.20(a)(2).

8

satisfied or replaced by either agreement."). Accordingly, while it is true that Defendant could have been more forthcoming with information and more responsive to Plaintiffs' inquiries, Plaintiffs fail to identify any factual or legal basis for concluding that Defendant's handling of the Forbearance Agreement was a violation of *federal* law. Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant's motion to dismiss Plaintiffs' TILA claim with regard to the Forbearance Agreement must therefore be GRANTED. *See Bell Atl.*, 127 S. Ct. at 1968 (to survive a motion to dismiss, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.") (citation omitted).

## 2. The Loan Modification Agreement.

Plaintiffs' TILA claim with regard to the Loan Modification Agreement is even more tenuous as they concede that they never signed it, and do not claim enforceable rights under it as drafted. Rather, they assert Defendant was legally bound to make Plaintiffs' proposed revisions to the Loan Modification Agreement and to modify the interest rate for Plaintiffs' Residential Home Mortgage in accordance with Plaintiffs' repeatedly expressed expectations. Whatever merits these claims may have under state law, they do not give rise to a cause of action under the TILA. Indeed, even had Plaintiffs signed the Loan Modification Agreement, it would have been exempt from TILA disclosure requirements as it did not constitute either an extension of new credit or a "refinancing." *See* 12 C.F.R. § 226.20(a)(2) (excluding from the disclosure requirements for "refinancings" "[a] reduction in the annual percentage rate with a corresponding change in the payment schedule"); *see also Diamond v. One West Bank*, 2010 WL 1742536, at *5 (D. Ariz. Apr. 29, 2010) ("A loan modification does not require additional TILA disclosures, particularly where no new monies are advanced."); *Sheppard v. GMAC Mortg. Corp. (In re Sheppard)*, 299 B.R. 753, 760-63 (Bankr. E.D. Pa. 2003) (holding that loan modification was not a refinancing under 12 C.F.R. § 226.20(a) and therefore defendant did not have to provide TILA disclosures, even when additional sum was added to plaintiffs' original loan amount, as new obligation did not completely replace the prior one); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F.

9

Supp. 2d 516, 528 (E.D. La. 2009) (holding that where a loan modification agreement does not "completely replace" an earlier mortgage, but rather "amends and supplements" it, the document does "not give rise to disclosure requirements or rescission rights under TILA."). As a result, Plaintiffs' TILA claims pertaining to the unsigned Loan Modification Agreement must also be DISMISSED.

### C.   Plaintiffs' HOEPA Claims.

In their brief, Plaintiffs assert that the Forbearance Agreement fails to comply with 15 U.S.C. § 1639(b)(2)(A) of the Home Ownership Equity Protection Act of 1994 ("HOEPA"). They further assert that the Loan Modification Agreement fails to comply with § 1639(f) of HOEPA. Defendant counters that HOEPA does not apply to either document.

The court first addresses whether it should analyze a claim raised only in the parties' briefs. Plaintiffs, as *pro se* litigants, are "afforded extra leeway in meeting the procedural rules governing litigation" and courts should "make some effort to protect a party so appearing from waiving a right . . . because of his or her lack of legal knowledge." *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008) (internal quotation marks and citations omitted). "To give such extra leeway, courts are, for example, to construe a *pro se* litigant's pleadings and motions liberally, and to allow amendments to a *pro se* litigant's pleadings more freely[.]" *Id.* Accordingly, the court construes Plaintiffs' brief raising the HOEPA claims as an amendment to Plaintiffs' Complaint.

HOEPA "augmented TILA with additional disclosure obligations and substantive requirements for particular high-cost mortgages." *Lancaster v. Countrywide Home Loans, Inc.*, 2009 WL 2584736, at *3 n.2 (E.D. Mich. Aug. 19, 2009) (quoting *Fonua v. First Allied Funding*, 2009 WL 816291, at *4 (N.D. Cal. Mar. 27, 2009)). "HOEPA mandates that 'high rate mortgages' be conspicuously accompanied by various disclosure statements given at least 3 days before the transaction is consummated." *Ng v. HSBC Mortg. Corp.*, 2010 WL 889256, at *7 (E.D.N.Y. Mar. 10, 2010). High-rate mortgages are those for which:

the annual percentage rate at consummation of the transaction will exceed
more than 10 percentage points the yield on Treasury securities having
comparable periods of maturity on the fifteenth day of the month
immediately preceding the month in which the application for the extension
of credit is received by the creditor; or [those in which] the total points and
fees payable by the consumer at or before closing will exceed the greater of
8 percent of the total loan amount or $400.

15 U.S.C. § 1602(aa)(1)(A), (B). "[R]esidential mortgage transactions are exempt from

the requirements of . . . HOEPA." *Ng.*, 2010 WL 889256 at *8. HOEPA defines a

"residential mortgage transaction" as "a transaction in which a mortgage . . . is created or

retained against the consumer's dwelling to finance the acquisition or initial construction

of such dwelling." 15 U.S.C. § 1602(w). Accordingly, for HOEPA to apply, the high-

cost mortgage loan "must be a second or subordinate residential mortgage[.]" *Nelson v.

JPMorgan Chase Bank, N.A.*, 707 F. Supp.2d 309, 312 (E.D.N.Y. 2009).

In the absence of further pleading, Plaintiffs have failed to allege sufficient facts

from which this court may conclude that Plaintiffs are entitled to HOEPA's protections.

In one of their attachments to the Complaint, Plaintiffs allege that their Residential

Mortgage was obtained after the acquisition and construction of their dwelling.

However, beyond this mere unsupported allegation, Plaintiffs provide no facts that would

permit the court to conclude that HOEPA's exemption for "residential mortgage

transactions" does not apply. It is Plaintiffs' burden to allege sufficient facts to support a

legal conclusion that they are entitled to HOEPA's protections. *See* 5 C. Wright & A.

Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading

must contain something more . . . than . . . a statement of facts that merely creates a

suspicion of a legally cognizable right of action"). At this juncture, they have not done so

and their HOEPA claims must be DISMISSED.

### D.   Leave to Amend.

Generally, although a district court should not dismiss a *pro se* complaint without

granting the plaintiff leave to amend, dismissal is appropriate where leave to amend

would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). This court

11

has found that Plaintiffs' TILA causes of action have failed to state a claim, and does not at this time grant leave to amend those claims in the absence of legal authority that would authorize a TILA claim in the circumstances of this case. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).") (citation omitted).

The court, however, hereby GRANTS Plaintiffs leave to amend to assert facts in support of their HOEPA claims as Plaintiffs raised those claims for the first time in their briefs and thus may have not set forth all of the facts upon which their claims are based. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (advising district courts to grant leave to amend "at least once when a liberal reading of the complaint gives an[ ] indication that a valid claim might be stated.") (citation omitted).

Because the court has granted Plaintiffs leave to amend, it will not address Defendant's request that the court refrain from exercising supplemental jurisdiction over the Plaintiffs' state law causes of action at this time.

## CONCLUSION

For the reasons stated above, the court GRANTS WITHOUT PREJUDICE Defendant's motion to dismiss Plaintiffs' TILA and HOEPA CLAIMS. Plaintiffs are hereby GRANTED LEAVE TO AMEND their Complaint by filing a proposed amended complaint in accordance with this Order, the court's Local Rules, and the Federal Rules of Civil Procedure within twenty (20) days of this Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __7__ day of January, 2011.

Christina Reiss, Chief Judge
United States District Court

12